Opinion issued July 17, 2008











 




In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00062-CV






TRAVELERS INDEMNITY COMPANY, Appellant


V.


TEXAS MUNICIPAL LEAGUE JOINT SELF-INSURANCE FUND, FOR
ITSELF AND AS SUBROGEE OF THE CITY OF BUNKER HILL
VILLAGE, Appellee






On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 2007-67880






MEMORANDUM OPINION


 Appellant, Travelers Indemnity Company ("Travelers"), appeals the trial
court's order denying its motion to compel arbitration in its dispute with appellee,
Texas Municipal League Joint Self-Insurance Fund, for itself and as subrogee of the
City of Bunker Hill Village ("TML-JSIF"). In its sole issue, Travelers argues that the
trial court erred in denying Travelers's motion to compel arbitration.

 We affirm.

Background

 In November 2002, Travelers entered into a reinsurance agreement with TML-JSIF, a joint self-insurance fund providing property, boiler and machinery, and
automobile physical damage insurance for participating self-insured political
subdivisions of the State of Texas. The City of Bunker Hill Village ("Bunker Hill")
is a participant in the TML-JSIF. On July 31, 2003, Bunker Hill discovered damage
to one of its water wells. TML-JSIF paid Bunker Hill for the damaged water well and
made a claim under the reinsurance agreement with Travelers. Travelers denied that
the claim was covered by its reinsurance agreement with TML-JSIF. In November
2007, TML-JSIF filed suit against Travelers, asserting claims for declaratory
judgment, breach of contract, and violations of the Texas Insurance Code.

 Travelers filed a motion to compel arbitration under section 171.021 of the
Texas Civil Practice and Remedies Code and Article XIV of the reinsurance
agreement, entitled "Dispute Resolution." (1) Article XIV of the agreement between
Travelers and TML-JSIF states, in part:

Either party may, by written request to the other party, seek to arbitrate
any dispute arising out of, or related in any way to this Contract or the
transactions hereunder, including its formation, termination, and
validity, other than disputes with the Property Reinsurer(s) under Article
XI, "Joint or Disputed Loss[,]" which will be arbitrated pursuant to the
mandatory binding arbitration provisions of that Article.


. . . Following receipt of a request for arbitration, the non-requesting
party shall, within thirty (30) days by written response, accept or reject
such a request. Once such a written response has been delivered, the
parties may not, except by mutual agreement, revoke the decision to
proceed with arbitration. Within thirty (30) days after delivery of a
written response accepting a request for arbitration, each party shall
appoint an arbitrator.


Article XIV then outlines the procedure to be followed in the event of an arbitration
under that article. Article XIV provides that arbitration shall take place in Travis
County, Texas and that the arbitration panel shall apply the substantive law of the
State of Texas. TML-JSIF filed a response opposing the motion to compel
arbitration. (2)

 A hearing on Travelers's motion to compel arbitration was held on January 10,
2008, and the trial court denied the motion to compel arbitration.

Standard of Review

 To compel arbitration, a party must show that there is a valid arbitration
agreement and that the claims raised fall within the agreement's scope. In re Kellogg
Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Because
there is a presumption favoring agreements to arbitrate, doubts regarding an
agreement's scope are resolved in favor of arbitration; however, the presumption
arises only after the party seeking to compel arbitration proves that a valid arbitration
agreement exists. Id.

 Whether a valid arbitration agreement exists is a legal question that we review
de novo. In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006). We
determine the validity of an arbitration agreement by applying state contract law
principles. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). We
must ascertain the intent of the parties as expressed in the instrument. Id. at 229. 
Although an arbitration agreement does not have to assume any particular form, the
language of the agreement must clearly indicate an intent to arbitrate. Wachovia
Securities, L.L.C. v. Emery, 186 S.W.3d 107, 113 (Tex. App.--Houston [1st Dist.]
2006, no pet.). Without an agreement to arbitrate, arbitration cannot be compelled. 
Id. (citing Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding)). 
We examine the entire writing as a whole and give effect to all its provisions. 
Davidson, 128 S.W.3d at 229.

Analysis

 Here, Travelers has not proven that a valid binding arbitration agreement
exists. (3) The agreement uses permissive language, stating that "[e]ither party may, by
written request to the other party, seek to arbitrate any dispute," and the agreement
further provides that "[f]ollowing receipt of a request for arbitration, the non-requesting party shall, within thirty (30) days by written response, accept or reject
such a request." It is clear that the parties intended that one party could reject the
other party's request to seek arbitration. If we were to hold that the arbitration
provision here is mandatory, the language allowing a party to reject a request for
arbitration would be meaningless, and we would be failing to give effect to all of the
provisions of the agreement. See Davidson, 128 S.W.3d at 229.

 Travelers argues that the arbitration clause requires the parties to submit to
arbitration once one of the parties requests it and cites In re U.S. Home Corporation
in support of its contention. See 236 S.W.3d 761 (Tex. 2007). In In re U.S. Home,
two contracts governed the relationship between the parties. Id. at 765. The parties
signed a sales agreement that clearly required arbitration and a warranty agreement
that provided that either party "may request" arbitration. Id. The Texas Supreme
Court stated,

We must construe the parties' contracts together if we can, rather than
allowing one to cancel the other. . . . While the warranty's clause
allowed either party to request arbitration, nothing in it suggests
arbitration was optional if either did; to the contrary, the clause
constituted a binding promise to arbitrate if either party requested it.


Id. (internal citations omitted).

 Here, the agreement between the parties is clearly distinguishable from that in
In re U.S. Home. The parties had no agreement similar to the sales agreement in In
re U.S. Home, which required the parties to arbitrate their claims. Furthermore,
unlike the warranty agreement in In re U.S. Home, the reinsurance agreement between
Travelers and TML-JSIF does contain language suggesting that arbitration was
optional if either party requested arbitration. The agreement between Travelers and
TML-JSIF clearly states that one party can reject the other party's request to seek
arbitration.

 Travelers also argues that an interpretation that construes the arbitration
language as optional would render Article XIV of the reinsurance agreement
meaningless. Travelers cites several cases from other jurisdictions in which courts
have held that arbitration clauses that use permissive language should still be
interpreted as requiring arbitration once a party requests arbitration. See United
States v. Bankers Ins. Co., 245 F.3d 315, 320-21 (4th Cir. 2001); Am. Ital. Pasta Co.
v. Austin Co., 914 F.2d 1103, 1103 (8th Cir. 1990); Ceres Marine Terminals, Inc. v.
Int'l Longshoremen's Assoc., Local 1969, 683 F.2d 242, 246 (7th Cir. 1982); Local
771, I.A.T.S.E., AFL-CIO v. RKO Gen., Inc., 546 F.2d 1107, 1115-16 (2nd Cir.
1977); J.C. Bonnot v. Congress of Indep. Unions Local No. 14, 331 F.2d 355, 359
(8th Cir. 1964); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 421 (5th
Cir. 1962); TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 557 S.E.2d 199, 201
(Va. 2002); Orthopedic Phys. Therapy Ctr. v. Sports Therapy Ctrs., Ltd., 621 A.2d
402, 403 (Me. 1993); City of Louisa v. Newland, 705 S.W.2d 916, 917 (Ky. 1986). 
However, those cases are also distinguishable because none of the arbitration clauses
in those cases contains language that indicates a party may reject a request to seek
arbitration. See, e.g., Bankers Ins. Co., 245 F.3d at 318 ("[A] misunderstanding or
dispute may be submitted to arbitration for a determination [that] shall be binding
upon approval by the FIA."); Am. Ital. Pasta Co., 914 F.2d at 1103-04 (providing
that the parties should first attempt to settle disputes "in a manner that is fair and
equitable to both parties before either party can exercise the right of any legal action,"
and concluding, "If both parties agree that a dispute or disagreement is of such a
nature that it cannot be settled as provided for above, then such dispute or
disagreement may be submitted to arbitration[.]"); TM Delmarva Power, 557 S.E.2d
at 201 ("If any material dispute, disagreement or controversy concerning this
Agreement is not settled in accordance with the provisions [for resolution by
conciliators,] then either Party may commence arbitration hereunder by delivering to
the other Party a notice of arbitration.").

 Here, if we were to hold that arbitration was required once Travelers requested
it, we would render meaningless the provision that the parties could choose to reject
a request to arbitrate. Furthermore, Article XIV still has meaning under our
interpretation because it requires the parties to follow through with the arbitration
process once they have agreed to seek arbitration, and it provides the procedure that
the parties must follow in the event that an arbitration ever actually takes place. Our
interpretation of the reinsurance agreement between Travelers and TML-JSIF gives
meaning to all portions of the agreement. See Davidson, 128 S.W.3d at 229.

 We conclude that the parties did not express an intent to arbitrate in Article
XIV of the reinsurance agreement. In fact, they clearly expressed the intent that
either party be able to reject the other party's request to seek arbitration. See
Wachovia Securities, 186 S.W.3d at 113 (holding that language of agreement must
clearly indicate intent to arbitrate before parties can be compelled to arbitrate). 
Travelers has failed to prove that a valid arbitration agreement exists, and, therefore,
we hold that the trial court did not err in denying Travelers' motion to compel
arbitration. See Kellogg Brown & Root, 166 S.W.3d at 737; Wachovia Securities, 186
S.W.3d at 113 (holding that a party cannot be compelled to arbitrate without an
agreement to arbitrate).

 We overrule Travelers's sole issue.

Conclusion

 We affirm the order of the trial court.






 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. Travelers is seeking to compel arbitration under the Texas Arbitration Act. See Tex.
Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2005), which is undisputed
by appellee.. Therefore, an interlocutory appeal may be taken from the trial court's
denial of the motion to compel arbitration. Id. § 171.098(a)(1).
2. The only "written request" for arbitration that was given in this case was Travelers's
motion to compel arbitration. Therefore, TML-JSIF's response opposing Travelers's
motion to compel arbitration serves as a clear rejection of Travelers's "written
request."
3. Both parties agree that this is not a dispute "with the Property Reinsurer(s) under
Article XI, 'Joint or Disputed Loss.'"