# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3523

———————

Ora J. Berkley,                                     *
                                                    *
                    Appellant,                       *
                                                    *   Appeal from the United States
            v.                                      *   District Court for the Eastern District
                                                    *   of Missouri.
Dillard's Inc. and Kim Georgie,                     *
                                                    *
                    Appellees.                       *

———————

Submitted: April 21, 2006
Filed:  June 14, 2006

———————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

    Ora J. Berkley sued her former employer and a supervisor for racial harassment, intentional infliction of emotional distress, negligent infliction of mental distress, and retaliation.  The district court[1] compelled arbitration.  After the arbitration, it dismissed Berkley's case with prejudice.  Berkley appeals.  This court affirms.

    Berkley, an African American, began working in August 2000 for Dillard's, Inc. According to her, in 2001 some coworkers—including supervisor Kim

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Georgie—began to harass her. On May 23, 2001, Berkley filed complaints against Dillard's with the EEOC and the Missouri Commission on Human Rights ("MCHR"), alleging racial harassment.

On June 16, 2001, Dillard's implemented an arbitration program. The same day, Dillard's distributed two documents describing the program to Berkley and other employees. The "Rules of Arbitration" document says: "Arbitration applies to any claim that could be made in a court of law," including "harassment on the basis of race" and "[r]etaliation for . . . exercising your protected rights under any statute." The second document, "The Dillard's Fairness in Action Program," summarizes the policy, specifying how an employee can accept it. That document says that by "accepting or continuing employment with Dillard's, you have agreed to accept the Program known as the Agreement to Arbitrate Certain Claims." The document also reiterates that the arbitration program covers racial harassment and retaliation claims.

A few days later, Dillard's asked its employees to sign an "Acknowledgment of Receipt of Rules for Arbitration." That document states: "Employees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith." The document has a signature line where the employee can acknowledge receipt of the rules of arbitration and the agreement to arbitrate certain claims. Berkley refused to sign. Dillard's advised her that refusing to sign had no effect on the applicability of the arbitration agreement, because it applied automatically to all employees who continued their employment.

After receiving notice of right to sue from the EEOC and the MCHR, Berkley sued in the district court on February 19, 2002. On March 8, Dillard's fired her. Berkley then amended the complaint to add a claim of retaliation.

Dillard's moved to compel arbitration and stay the district court proceedings. The court granted the motion, finding that Berkley's claims were covered by the

arbitration program. Following arbitration, the court dismissed with prejudice each of Berkley's claims.

I.

This court reviews de novo a district court's order compelling arbitration, when the decision is based on contract interpretation. *See **Lyster v. Ryan's Family Steak Houses, Inc.***, 239 F.3d 943, 945 (8th Cir. 2001) (citing ***PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.***, 225 F.3d 974, 978 (8th Cir. 2000)). The district court's factual findings are reviewed for clear error. ***Id.*** "A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." ***Id.*** (citations omitted).

Berkley argues that the district court erred in enforcing the arbitration agreement. In particular, Berkley asserts that the district court "had no basis for the conclusion that the Dillard's arbitration program was part of a larger offer of a unilateral contract of at-will employment that could be accepted by Ms. Berkley's continuing her preexisting employment with Dillard's." Berkley relies on *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo. banc 1988), where the Missouri Supreme Court found that an employer's distribution of an employee handbook describing company policies was not a contractual offer to the employees.

Berkley's reliance on *Johnson* is misplaced. There, the court emphasized that the handbook was "merely an informational statement" providing "the rules were subject to change at any time." ***Id.*** at 662. In contrast, "The Dillard's Fairness in Action Program" document is contractual, not merely informational. It states that, by "accepting or continuing employment with Dillard's, you have agreed to accept the Program known as the Agreement to Arbitrate Certain Claims." Unlike the handbook in *Johnson*, the Dillard's document is a valid offer. See ***Patterson v. Tenet Healthcare, Inc.***, 113 F.3d 832, 835 (8th Cir. 1997) (employee–employer arbitration

-3-

agreement is valid where it "uses contractual terms such as 'I understand,' 'I agree,' I 'agree to abide by and accept,' 'condition of employment,' 'final decision,' and 'ultimate resolution.'")

Berkley next contends that, even if there was a valid offer to arbitrate, she rejected it by refusing to sign the acknowledgment form. However, the acknowledgment form—much like "The Dillard's Fairness in Action Program" document—states that employees "are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith." Further, after Berkley refused to sign, Dillard's informed her that her refusal did not affect the arbitration agreement, which applied automatically to all employees who continued their employment. By continuing her employment, Berkley accepted the terms of the arbitration program. *See Cook v. Coldwell Banker*, 967 S.W.2d 654, 657 (Mo. App. 1998); *Easy Returns Midwest, Inc. v. Schultz*, 964 S.W.2d 450, 454 (Mo. App. 1998).

Berkley further argues that her claims do not fall within the scope of the arbitration agreement, because most of them arose before Dillard's implemented the Program. However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster*, 293 F.3d at 945. The plain language of the arbitration agreement includes "any claim that could be made in a court of law." The arbitration agreement does not exclude pending administrative complaints. *See Winfrey v. Bridgestone/Firestone, Inc.*, No. 99-1405, 1999 WL 1295310, at *2 (8th Cir. Dec. 23, 1999) (unpublished) (plain language of arbitration agreement covered plaintiff's claims against his employer, although they arose before the agreement). Berkley's claims are within the scope of the arbitration agreement.

Finally, Berkley asserts that the arbitration agreement is unconscionable, that she had "a reasonable expectation that her case would be tried in a court of law," and that the arbitration agreement is one-sided, without mutual obligations. This court declines to consider those arguments because Berkley failed to raise them before the

district court and to develop the relevant facts. *See **Orr v. Wal-Mart Stores, Inc.***, 297 F.3d 720, 725 (8th Cir. 2002) ("Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.") (internal citations omitted).

II.

The district court's judgment is affirmed.

_____